AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.
iPhone (Pink) with IMEI: 353009091729537 )
(Target Telephone-3) )

19MJ0366



FILED
JAN 2 5 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846, 843 | Possession of a Controlled Substance with Intent to Distribute, and Conspiracy to do the same; Illegal Use of a Communication Facility; |

The application is based on these facts:

See attached affidavit of Michael J. Rod.

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael J. Rod, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/25/19

*Judge's signature*

City and state: San Diego, California     Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-3
## PROPERTY TO BE SEARCHED

An iPhone (Pink) with IMEI: 353009091729537 seized from Robert Lorifice (**Target Telephone-3**).

**Target Telephone-3** is currently in the possession of the FBI and being held as evidence in the Southern District of California.

# ATTACHMENT B
# ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachments A-1 through A-7 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones shall be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of **June 1, 2018** to and including **September 26, 2018**:

a. tending to identify efforts to obtain, possess, or distribute methamphetamine, heroin, or some other controlled substances;

b. tending to identity accounts, facilities, storage devices, and/or services-such as email addresses, IP addresses, and phone numbers-used to facilitate the smuggling and distribution of methamphetamine, heroin, or some other controlled substance;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling and distribution of methamphetamine, heroin, or some other controlled substance;

d. tending to identify travel to or presence at locations involved in the smuggling and distribution of methamphetamine or some other controlled substance, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephones; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841, 846, and 843.

9

# ATTACHMENT A-3
## PROPERTY TO BE SEARCHED

An iPhone (Pink) with IMEI: 353009091729537 seized from Robert Lorifice (**Target Telephone-3**).

**Target Telephone-3** is currently in the possession of the FBI and being held as evidence in the Southern District of California.

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachments A-1 through A-7 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones shall be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of **June 1, 2018** to and including **September 26, 2018**:

a. tending to identify efforts to obtain, possess, or distribute methamphetamine, heroin, or some other controlled substances;

b. tending to identity accounts, facilities, storage devices, and/or services-such as email addresses, IP addresses, and phone numbers-used to facilitate the smuggling and distribution of methamphetamine, heroin, or some other controlled substance;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling and distribution of methamphetamine, heroin, or some other controlled substance;

d. tending to identify travel to or presence at locations involved in the smuggling and distribution of methamphetamine or some other controlled substance, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephones; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841, 846, and 843.

9

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Michael J. Rod, being duly sworn, declare and state:

### PURPOSE OF AFFIDAVIT

1. This affidavit supports applications for warrants to search the following cellular phones:

   a. An iPhone Model A1662 with IMEI: 355798079372488 seized from Robert Lorifice (LORIFICE) (**Target Telephone-1**);

   b. An iPhone (Black) with IMEI: 354840093975713 seized from LORIFICE (**Target Telephone-2**);

   c. An iPhone (Pink) with IMEI: 353009091729537 seized from LORIFICE (**Target Telephone-3**);

   d. A Huawei Model H1711 with FCC ID: QISH1711 and IC: 579C-E3087A seized from Lillian Weigle (WEIGLE) (**Target Telephone-4**);

   e. An iPhone (Black) Model A1661 with FCC ID: BCG-E3087A seized from WEIGLE (**Target Telephone-5**);

   f. A Samsung Model SM-S327VL with IMEI: 355744094189705 seized from Thomas Herbert (HERBERT) (**Target Telephone-6**); and

   g. A LG Model LG-V5501 with IMEI: 355275088658504 seized from HERBERT (**Target Telephone-7**);

(collectively, **Target Telephones**), as described in Attachments A-1 through A-7.

2. Based on the information below, there is probable cause to believe evidence of crimes in violation of Title 21, United States Code, Sections 841 (Possession of controlled substances with the intent to distribute), 846 (Conspiracy to distribute controlled substances); and Title 21 United States Code, Section 843(b) (Illegal use of a communication facility); as described in Attachment B, will be found on the **Target Telephones**.

3. The **Target Telephones** were seized on September 26, 2018, during the execution of state search warrant 1019-18 at LORIFICE's residence located at 1629 Blossomfield Way, Encinitas, California. The **Target Telephones** were seized during the execution of the state search warrant and were subsequently logged into FBI evidence in the Southern District of California.

4. Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by task force officers from the North County Regional Gang Task Force (NCRGTF) or other multi-agency federal, state, and local drug/gang task force officers with whom I have spoken, whom were involved in this investigation, or whose reports I have read and reviewed. Because this affidavit is being submitted for the limited purpose of seeking the search warrants specified above, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrants.

## TRAINING AND EXPERTISE

5. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

6. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since May 2010. I am currently assigned to the San Diego Field Division, North County Resident Agency. Prior to joining the FBI, I was a United States Marine Corps Judge Advocate serving on active duty from November 2001 until May 2010. In my capacity as a Judge Advocate, I prosecuted and defended violations of the Uniform Code of Military Justice, acted as the Investigating Officer during criminal proceedings, provided legal assistance to service members, and advised military commanders on a wide variety of civil and administrative matters.

7. I have received twenty-one (21) weeks of training at the FBI Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, and a variety of other subjects. I have acted as the lead investigator on a variety of cases and have participated in multiple cases that have focused on gang related matters.

8. Since July 2012, I have been assigned to the NCRGTF. The San Diego County Sheriff's Department has appointed me an Associate Agent assigned to the Sheriff's Department Special Investigation Division and specifically assigned to the NCRGTF. During my time at the NCRGTF, I have had personal contact with dozens of self-admitted or known gang members and their associates and have discussed their lifestyles, method of operations regarding violent and property crimes, and their drug trafficking and drug distributing activities. I have participated in investigations involving criminal gang members including but not limited to Hispanic criminal street gangs and have performed various investigative tasks involving the following:

  a. Functioning as a surveillance agent and thereby observing and recording movements of gang members trafficking in illegal drugs and weapons, and those suspected of committing violent crimes and trafficking in illegal drugs and weapons;

  b. Tracing monies and assets gained by drug traffickers from the sale of illegal sale of drugs and weapons (laundering of monetary instruments);

  c. Interviewing dozens of witnesses, cooperating individuals, and confidential informants relative to gang activities including: violent acts, illegal trafficking of drugs and the distribution of monies and assets derived from illegal trafficking of drugs;

d. Monitoring and reviewing thousands of recorded jail calls as well as recorded telephone calls pursuant to Title III court orders in narcotics and gang-related cases as well as handled Confidential Human Sources with access to drug dealers, firearms dealers, gang members and the Mexican Mafia hierarchy; and

e. Supervising, as a case agent/co-case agent, specific investigations involving criminal gangs, trafficking of drugs, weapons and the laundering of monetary instruments.

9. In my training and experience, I have learned that individuals engaged in narcotic trafficking often use their cell phones and electronic media to conspire, plan and coordinate their criminal activities and that cellphones and electronic media retain evidence of their crimes such as communications, photographs, videos, contact information of co-conspirators, location data, travel arrangements, and financial data that evidence criminal activities.

## FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

10. On September 26, 2018, a state search warrant (1019-18) was executed at LORIFICE's residence located at 1629 Blossom Field Way, Encinitas, California, in the Southern District of California. Investigators had to force entry and found LORIFICE and Elizabeth Landis (LANDIS) upstairs in the master bedroom. Investigators observed that LORIFICE's hands were wet and there was water all over the floor of the master bedroom's bathroom. In a closet in LORIFICE's room was an open safe, which contained several hundred Xanax pills, approximately half an ounce of methamphetamine, approximately an ounce of heroin, and packaging material. In a second closet in LORIFICE's room, investigators found a closed safe, which contained a large amount of currency and LOFIRICE's passport. In the bathroom, on top of the sink was a Tupperware-style container that contained a white crystalline substance, on the floor in front of the sink was a baggie containing a golf ball-sized chunk of a white crystalline substance, and near the toilet was a small chunk of a blue crystalline substance. Investigators located two large baggies of a brown powdery substance inside

4

of the toilet tank, which they recognized as heroin. In other locations in LORIFICE's room, investigators found approximately an ounce of a blue crystalline substance, several smaller baggies of a crystalline substance, Roxicodone pills, Xanax pills, a yellow powdery substance, marijuana, psilocybin mushrooms, cash, a digital scale, and packaging materials.

11. From LORIFICE's room, in total, investigators seized $16,824 in United States currency, approximately 231.6 grams of a substance that tested positive for heroin, and approximately 193 grams of a substance that tested positive for methamphetamine, and approximately 199.6 grams of marijuana. The methamphetamine was sent to a DEA laboratory and it was determined that more than 50 grams of actual methamphetamine was seized from LORIFICE's room. Three cellular telephones were located and seized from within LORIFICE's room, **Target Telepone-1**, **Target Telephone-2**, and **Target Telephone-3**.

12. In a post-*Miranda* statement, LORIFICE said he was not selling drugs and the narcotics have been left at his house by someone named T.W.T. and he was afraid to get rid of them.

13. LORIFICE shared his residence with WEIGLE and HERBERT. At the time of the search warrant, WEIGLE and her boyfriend Kross Elliott (ELLIOTT) were located in another upstairs bedroom. Investigators searched the room and found in plain view a chunk of brown tar-like substance that investigators recognized as heroin, baggies of a white crystalline substance, packaging material, a large sum of United States currency, and other items belonging to WEIGLE throughout the room. In total, investigators seized $1,047 in United States currency, approximately 18.4 grams of a substance that tested positive for methamphetamine, and approximately 2 grams of heroin from WEIGLE's room. Additionally, **Target Telephone-4** and **Target Telephone-5** were located and seized from WEIGLE's room.

14. WEIGLE said she lived at LORIFICE's, she smoked methamphetamine, did not consume heroin, and had bought an ounce of methamphetamine from

1 LORIFICE for only $200 two weeks earlier. WEIGLE said she purchased such a large amount because it was cheaper. ELLIOTT told investigators that WEIGLE and he were methamphetamine addicts, had 3 or 4 grams of methamphetamine in the room, and the other methamphetamine and drugs in the room were stored there by LORIFICE.

15. HERBERT was located in another upstairs bedroom. Investigators searched the room and found a golf ball sized chunk of suspected heroin, Xanax pills, a large amount of United States currency, a scale, bills in HERBERT's name, and other personal items indicating the room was his domicile. In total, investigators seized $762 in United States currency and approximately 18.7 grams of a substance that tested positive for heroin. Additionally, **Target Telephone-6** and **Target Telephone-7** were located and seized from HERBERT's room.

16. Based on my training and experience, I know that it is common for narcotics distributors to regularly utilize multiple cellular telephones to coordinate narcotics transactions. Additionally, I know that narcotics trafficking is an ongoing activity and that electronic evidence of prior transactions can be found in cellular phones utilized by sellers and buyers of narcotics and that electronic evidence can date back months to years. Further, based on my training and experience, I believe that the quantities of narcotics possessed by LORIFICE, WEIGLE, and HERBERT are consistent with narcotics possessed for distribution. Based on my training and experience and all the factors described above, including the specific items located in rooms associated to LORIFICE, WEIGLE, and HEBERT, I believe that all three were engaged in the sale of illegal narcotics and that the **Target Telephones** were used for such purpose and that evidence of crimes as described in Attachments B will be found in the **Target Telephones.**

## CELL PHONE SEARCH METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can

6

be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must examine the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, FBI will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards, call detail records, and deleted files will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//

## CONCLUSION

20. Based on the foregoing, I believe there is probable cause to believe items that constitute evidence of violations of federal criminal law, namely, of Title 21, United States Code, Sections 841, 846, and 843, as described in **Attachment B**, will be found in the properties to be searched, as provided in **Attachment A-1 through A-7**.

Michael J. Rod
FBI Special Agent

SUBSCRIBED and SWORN to before me this 25 day of January

HON. WILLIAM V. GALLO
United States Magistrate Judge

8